Gkebn, J.
delivered the opinion of the court.
This is a bill filed to subject the interest of the defendant Henderson in certain negroes, to the satisfaction of a judgment obtained by the complainant against him. The facts are as follows:
The complainant obtained judgment against the defendant, Pleasant Henderson, and others, in the'Fayette Circuit Court, at the May term, 1841, for $2654 and costs, and issued an execution, directed to the sheriff of Fayette county, • which was returned no property found. The defendant, P. Henderson, had an interest in a number of slaves, which had been given to his mother for life, and who was then dead, but the slaves were still in the hands of the trustee and undivided. In Fe *77 bruary, 1840, before said judgment was rendered, the saidP. Henderson conveyed to his brother James M. Henderson all his interest in the slaves aforesaid. This deed was proved and registered in Carroll county, where the property then was; but it was merely colorable, having-been executed without consideration. At the August term, 1841, of the Chancery Court, at Huntingdon, a decree was made for the division of the negroes aforesaid, and in the latter part of that year the portion of P. Henderson was allotted to him. The other defendants, who are judgment creditors of James M. Henderson, caused the said negroes to be seized for the satisfaction of their debts; insisting that the negroes are liable as the property of the said J. M. Henderson. , The complainant has caused its execution to be levied on the same negroes as the property of Pleasant Henderson; but the sheriff persists in his, purpose, to sell the property by virtue of the executions against James M. Henderson; to prevent which, and subject the property to the satisfaction of its judgment, the complainant exhibits its bill.
The bill is framed, and the cause has been argued, as if the conveyance from Pleasant to James M. Hendér'son was to be regarded and treated as a fraudulent conveyance as to creditors under the statute. But we cannot so consider it. At the time the conveyance was made, Pleasant Henderson had an equitable interest in an undivided property, which was still in the hands of the trustee, to whom it was conveyed for the use of his mother, during her life. This property was not subject to execution. And if the deed to James M. Henderson, had not been made, it could not have been levied on by the complainant’s execution. If then the deed to James M. Henderson was declared void for fraud, still the property not being liable to execution, the complainant would not be benefited thereby. It is, therefore, absurd to say that a deed is fraudulent against creditors who are not injured by its execution, and' who would not be benefited if it were declared void. Story’s Eq. sec. 366, 367.
The next- enquiry is, what property James M. Henderson acquired in these negroes by this deed, and what rights *78 have the defendants by the levy of their executions on the ne-groes.
It is admitted that James M. Henderson gave nothing for the negroes, and that the conveyance to him was merely colorable. He acquired, therefore, no equitable interest to the property; for an equity cannot exist when there is no consideration. Although the deed to him, of February 1840, may have vested in him the legal title to the negroes, by relation, when, in 1840, they were divided by a decree of court, yet it could only be a mere naked legal title, with a resulting trust for the grantor, Pleasant Henderson. Thus situated, the defendants, creditors of James M. Henderson, levied their executions. It is clear they could get by this levy, no better right tó the property than their debtor possessed; a naked legal title. But we have seen that Pleasant Henderson was entitled to the negroes in equity, notwithstanding the conveyance; and the complainant has a right to subject this equitable interest to the satisfaction of its judgment. Against this equity, the defendants have no opposing equity, and, therefore, their legal advantage is wholly unsupported by a consideration, which in a court of equity would enable them to resist the complainant’s claim. It would have been otherwise, had the property been sold by virtue of the executions of the defendants. In that case, the purchasers having advanced their money, which would have created in them an equity, and which coupled with the legal title, would have protected them. Their equity would have been equal'to that of the complainant, and having the legal advantage, they would have had the better title. But as the defendants have no equity, the complainant is entitled to a decree for the sale of the negroes for the satisfaction of its execution; and if there should be an overplus, it will be paid to Pleasant Henderson.